## 62999. BYERS v. SOUTHEASTERN NEWSPAPER CORPORATION, INC.

CARLEY, Judge.

Defendant-appellee, Southeastern Newspaper Corporation, Inc., published an article in the May 27, 1979 edition of its newspaper which commented on the present status and past activities of plaintiff-appellant, Thomas H. Byers, as Dean of Savannah State College. Entitled "Byers Doubts Legality of Hall's Plan," the article quotes from a memorandum which appellant had written to Clyde Hall, Savannah State College's acting president, challenging Hall's authority and questioning the wisdom of Hall's plan to abolish the position which appellant held as Dean of the College. Subsequently, appellant instituted an action for libel against appellee alleging that he had sustained damages as the result of certain defamatory falsehoods contained in this article. Appellee answered, denying the material allegations of the complaint and asserting, among other defenses, an absence of malice and a constitutional privilege based upon its contention that the article commented "upon a matter of public interest involving a public official's activities in connection with the public office which he held." Following discovery, appellee moved for summary judgment based upon the pleadings, depositions and other matters filed with the court. From the order granting summary judgment in favor of appellee, appellant brings this appeal.

In related enumerations of error appellant attacks the merits of the grant of summary judgment in favor of appellee, contending that under the evidence of record genuine issues of material fact remained for jury determination. Resolution of this question requires that we establish as a predicate the applicable legal principles and

parameters within which the facts of the instant case must be considered. In the landmark case of New York Times Co. v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964), the United States Supreme Court recognized the necessity of balancing the interest of individuals in the protection of their reputation against the necessity of insuring compliance with the First Amendment's guarantee of freedom of the press. Finding that certain rules of law historically applied in defamation cases created a potential for self-censorship of the press which "dampens the vigor and limits the variety of public debate," the Court held liability could not be imposed for statements defaming a public official concerning his official conduct absent a showing "that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, supra, 376 U. S. at 279-280. Subsequently, the "New York Times" rule applicable to "public officials" was extended to require proof of actual malice in cases involving defamation of a "public figure." See Curtis Publishing Co. v. Butts and its companion case, Associated Press v. Walker, 388 U. S. 130, 162 (87 SC 1975, 18 LE2d 1094) (1967).

In 1971, it appeared that this was a shift of emphasis from the status of the individual defamed to a focus on the nature of the controversy. Rosenbloom v. Metromedia, Inc., 403 U. S. 29 (91 SC 1811, 29 LE2d 296) (1971). However, in Gertz v. Robert Welch, Inc., 418 U. S. 323 (94 SC 2997, 41 LE2d 789) (1974) the "public interest" test established in Rosenbloom was rejected in favor of a return to an analysis based upon the status of the individual defamed. In attempting to define who is a "public figure" for purposes of the First Amendment, the Supreme Court in Gertz created two subclassifications, to wit: (1) Persons who are public figures for all purposes; and, (2) persons who are public figures for the purposes of a particular public controversy. With regard to the first subclass, the Court reasoned that in some instances an individual may attain a position "of such persuasive power and influence" and "achieve such pervasive fame or notoriety," that he has become a public figure in all situations. Gertz, supra, 418 U. S. at 345, 351. The Court further stated that "[a]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." Gertz, supra, 418 U. S. at 352. Accord, Wolston v. Reader's Digest Assn., 443 U. S. 157, 165 (99 SC 2701, 61 LE2d 450) (1979). See generally, *Williams v. Trust Co. of Ga.,* 140 Ga. App. 49 (230 SE2d 45) (1976).

The Court in Gertz acknowledged that it is more common that persons will fall within the second category of "public figures" —

individuals who have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." 418 U. S. at 345. This limited-purpose public figure is "an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Gertz, supra, 418 U. S. at 351. In determining whether an individual is a public figure for a limited purpose the court must look "to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Gertz, supra, 418 U. S. at 352.

Turning to the facts of the instant case, the newspaper article here at issue involves the proposed restructuring of the administration of a local public college which, apparently, was a matter of general public interest and concern within the publication's area of circulation. Furthermore, appellant concedes that the allegedly defamatory falsehoods contained in the article were not published with "actual malice" as that term has been defined by New York Times Co. v. Sullivan, supra, and its progeny. The determination of the "status" of appellant is thus critical to the existence of liability on the part of appellee. If appellant is a private individual, genuine issues of material fact remain for resolution by the finder of facts and, thus, summary judgment was improper. On the other hand, if appellant is a "public official" or "public figure," as urged by appellee, liability may not be imposed, there being no contention as to existence of actual malice.

Appellee argues that, by virtue of appellant's position as Dean of Savannah State College, he is a "public official" within the purview of the rule enunciated in New York Times Co., supra. In Rosenblatt v. Baer, 383 U. S. 75 at 85 (86 SC 669, 15 LE2d 597) (1966), while discussing the concept of "public officials," the Court stated: "[T]he 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." The Court added: "Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, [the 'New York Times' rule applies]." 383 U. S. at 86.

While there are no Georgia decisions directly on point, other jurisdictions have found teachers and others holding positions of responsibility in a public educational system to be "public officials" under the "New York Times" rule. Based upon varying rationales, including but not limited to findings that the public has "an

independent interest in the qualifications and performances of the person holding the position" and that the position invited public scrutiny, the following school personnel have been designated "public officials": A school superintendent and a school supervisor (State v. Defley, 395 S2d 759 (La. 1981)); a high school principal (Kapiloff v. Dunn, 343 A2d 251 (2) (Md. App. 1975)); a public school wrestling coach (Johnston v. Corinthian Television Corp., 583 P2d 1101 (Ok. 1978)); a public school teacher (Sewell v. Brookbank, 581 P2d 267 (1) (Ariz. App. 1978)); an assistant dean and professor at a state university law school (Gallman v. Carnes, 497 SW2d 47 (Ark. 1973)). But see Poe v. San Antonio Express-News Corp., 590 SW2d 537 (Tex. Civ. App. 1979) and McCutcheon v. Moran, 425 NE2d 1130 (Ill. App. 1981) holding that a public school teacher and principal are not, as a matter of law, "public officials" under the "New York Times" rule.

For the reasons discussed below, we do not decide in this case whether, for purposes of Georgia defamation law, an educator in the public sector is a "public official." However, assuming for the sake of argument that such educators are not "public officials," the issue then becomes their status as "public figures." In this regard, we believe there to be a distinct difference between the duties and responsibilities normally associated with the position of dean at a state college and those associated with a teaching position at such institution. While both positions are funded by the public, the holder of the former is very often called upon to make public speeches, formulate and implement policy decisions, introduce guests and speakers at the college, and to interact with the citizenry of the surrounding community. Thus, even though the occupant may not be a "public official" the position of dean itself may be so prominent that any occupant unavoidably enters the public limelight and thereby becomes generally known in the community — a general public figure. On the other hand, a professor, unless he or she chooses otherwise, can generally remain out of the public eye and concern himself or herself with matters more directly related to academia.

The record before this court demonstrates that at the time of the article complained of, appellant had held the position of Dean of Savannah State College for approximately seven years. Prior to holding this position, appellant was an associate professor at the college and he also had served one year as Acting Dean of the Faculty. In addition, appellant actively involved himself in the civic affairs of the local community by serving on various boards and committees and in political affairs by holding memberships in various organizations and by actively supporting certain candidates' campaigns for office.

On these facts, and pretermitting a determination of whether appellant is a "public official" merely by virtue of his position or a "public figure" for all purposes by reasons of fame in the community, we find that appellant, as Dean of the College, was as to the controversy giving rise to the alleged libel, at the very least, a limited-purpose "public figure" within the contemplation of the "New York Times" rule and as defined in Gertz v. Robert Welch, Inc., 418 U. S. 323, supra. As previously noted, the article containing the allegedly defamatory falsehoods was concerned with a distinct public controversy of concern to the local community, the abolishment of the position held by appellant of Dean of Savannah State College and the constituent reorganization of the school's administration. While appellant may not have voluntarily injected himself in the controversy over whether or not the office of Dean of Savannah State College should be abolished, it is clear that appellant was drawn into this controversy by the announcement that the position would be abolished. After having been so drawn, appellant thrust himself into the vortex of this controversy in an attempt to influence others and, thus, invited attention and comment. Therefore, appellant had become voluntarily involved in the particular public controversy concerning the future of Savannah State and his own personal future with that institution. It follows that, appellant was at least a "public figure" for the limited issue of his tenure as dean of the college. It is with regard to and in connection with appellant's tenure in that position that the alleged libel occurred.

Hutchinson v. Proxmire, 443 U. S. 111 (99 SC 2675, 61 LE2d 411) (1979) is cited by appellant in support of his contention that he is not a public official or a limited purpose public figure. Hutchinson, a "research behavorial scientist" employed by the State of Michigan, instituted a libel action against Senator William Proxmire after being the recipient of the Senator's satirical "Golden Fleece Award." Recognizing that all public employees are not public officials for purposes of the "New York Times" rule, the Court held the mere receipt of public funds and Hutchinson's response to the Senator's "award" did not make Hutchinson a public figure. Rejecting the Senator's contention that Hutchinson was a public figure for the limited purpose of comment on his receipt of federal funds for research projects, the Court found that Hutchinson had attracted media attention *only* because of the Senator's award and Hutchinson's response thereto. Thus, the Court reasoned that to label Hutchinson a public figure would have been tantamount to allowing Senator Proxmire to create a defense through his own conduct.

The facts in the instant case are clearly distinguishable from

those in Hutchinson, and, thus, we find appellant's reliance thereon to be misplaced. Dr. Hutchinson attracted almost no media attention until *after* Senator Proxmire's bestowal of the "Golden Fleece Award." Until that time, Hutchinson had not been involved in any debate relating to the general question of how public funds should be spent. In short, Hutchinson owed virtually all his public notoriety to the Senator's unwelcome attention. In the instant case, appellant Byers had, by virtue of his position as dean, been drawn into a public controversy prior to the publication of the article in question. By his subsequent acts, appellant projected himself into the public controversy surrounding the proposed abolishment of his position. It is apparent, that by so doing appellant was attempting to influence the resolution of this issue which was important to and of possible profound effect in the local community.

Looking at the entire situation, we conclude that appellant was a public figure within the "New York Times" rule for the limited purpose of his participation in the above described controversy and all issues germane thereto. Since appellant concedes the absence of actual malice, summary judgment in favor of appellee was properly granted. Having made this determination, we need not reach the remaining issues presented to us for review.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED MARCH 1, 1982 —
REHEARING DENIED MARCH 18, 1982.

*Gilbert L. Stacy,* for appellant.
*Thomas H. Gignilliat, Morton G. Forbes,* for appellee.