## 64139. HEMENWAY v. BLANCHARD.

QUILLIAN, Chief Judge.

Plaintiff, John D. Hemenway, appeals from a jury verdict for the defendant Russell A. Blanchard, on a complaint alleging defendant libeled plaintiff by publication of a letter to the Augusta Herald on July 31, 1978. At that time Betty Hemenway, the wife of plaintiff, was a candidate for Congress from the 10th District — which includes Augusta. The incumbent was Doug Barnard, a close personal friend of the defendant. Blanchard was retired but had been President and Vice Chairman of the Georgia Railroad Bank, Dean and Director of the Georgia Banking School, President of the Georgia Banker's Association, President of the American Banker's Association,

Superintendent of the Sunday School, Chairman of the Board of Deacons and Chairman of the Board of Trustees at his church, Secretary and Treasurer of a student Rotary Education Fund — among other positions held in the Boy Scouts, Y.M.C.A., Salvation Army, Rescue Mission, Child Abuse Center, Child Enrichment Center, Cancer Society, Speech and Hearing School, and Chamber of Commerce.

An aide to Barnard called Blanchard and asked him if he would be willing to help Barnard. He said that he would. A letter was composed by Barnard's staff and mailed to Blanchard. He corrected one misspelled word and had a secretary at the bank type it for his signature. One portion of the letter stated: "Voters need to look at the Hemenways more closely. They didn't live in Georgia for many years, because they were in the U. S. State Department. Mr. Hemenway has been fired from a succession of positions, including the Foreign Service, the Pentagon, and the Foreign Service Association. When she lost the election here in 1976, he claimed residence in Seattle, Washington and ran for Congress from Washington State in a 1977 special election. He lost with less than 10 percent of the vote. Now they are back in the 10th District of Georgia looking for a job again... Neither of the Hemenways are listed as owning property in the State of Georgia. They look to me like nothing more than political vagabonds — opportunists — and we deserve better than that."

Hemenway brought this libel action against Blanchard, Barnard, and the publisher of the Herald. Barnard and the publisher were dismissed as the statute of limitations had run before they were served. Blanchard defended by asserting his belief in the truth of the statements in his letter and by claiming the plaintiff is a "public figure" in Augusta where this incident occurred. If plaintiff was a "public figure" he would have to prove defendant's alleged defamatory falsehood was made with "actual malice" before he would be entitled to judgment. Plaintiff brings this appeal from a jury verdict for defendant. *Held:*

1. Plaintiff contends the trial court erred in finding he was a "public figure." We do not agree. Georgia jurisprudence has been the vanguard in development of law regarding the right of privacy (*Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (50 SE 68) (1904); *Cox Broadcasting Co. v. Cohn,* 231 Ga. 60 (200 SE2d 127), s.c., 420 U. S. 469 (95 SC 1029, 43 LE2d 328)) and the U. S. Supreme Court, in New York Times v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686) sought an accommodation between the competing interests of the right of privacy of the individual (also found to exist in the Fourth Amendment — see Katz v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576)) and the freedom of speech and press of the First

Amendment.

The New York Times' rule is that "in a civil libel action by a public official against a newspaper those [Constitutional] guarantees [of freedom of speech and press, of the First Amendment] required clear and convincing proof that a defamatory falsehood alleged as libel was uttered with 'knowledge that it was false or with reckless disregard of whether it was false or not.' " Rosenbloom v. Metromedia, 403 U. S. 29, 30 (91 SC 1811, 29 LE2d 296). This latter rule is the "actual malice" test, that is whether the alleged defamatory statement was uttered "with knowledge that it was false or with reckless disregard of whether it was false or not." Wolston v. Reader's Digest Assn., 443 U. S. 157, 160 (99 SC 2701, 61 LE2d 450).

Although the Times' standard was formulated for defamatory falsehoods published about "public officials," the rule was extended to "public figures" in Curtis Publishing Co. v. Butts, 388 U. S. 130 (87 SC 1975, 18 LE2d 1094). But, in Gertz v. Robert Welch, Inc., 418 U. S. 323 (94 SC 2997, 41 LE2d 789), the Supreme Court declined to extend the Times' standard to a private individual. However, Gertz did establish a definitive test for determination of whether or not an individual is a "public figure" for the purpose of application of the Times standard. It held: "Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention are properly classed as public figures . . . For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment." 418 U. S. at 342-345. Thus, there are two types of "public figures," those "of especial prominence" are public figures "for all purposes," and those who "have thrust themselves to the forefront of a particular public controvers[y]," are public figures for the purpose of that particular controversy. *Byers v. Southeastern Newspaper Corp.,* 161 Ga. App. 717 (288 SE2d 698) (1982). In New York Times v. Sullivan, supra, the Court asked the rhetorical question: Did the plaintiff "thrust himself into the vortex of this public issue, did he engage the public's attention in an attempt to influence its outcome[?]" 418 U. S. at 352. If the answer to these questions is yes, we have a "public figure" for that particular controversy. Later, in Wolston v. Reader's Digest Assn., 443 U. S. 157, 167, supra, the Court "emphasized that a [trial] court must focus on the 'nature and extent of an individual's participation in the particular controversy giving rise to the

defamation.' " See also Gertz v. Robert Welch, Inc., 418 U. S. 323 at 352, supra.

In the instant case, although much of the evidence was tendered for the obvious purpose of showing Hemenway was a public figure "for all purposes," i.e., he was a Rhodes Scholar, a graduate of the U. S. Naval Academy, a candidate for Congress, a Foreign Service officer, President of the American Foreign Service Association, an expert on German and Soviet political matters and spoke both languages, was a University professor, an assistant to The Assistant Secretary of Defense, and made frequent appearances in the Washington, D. C. newspapers; we will heed the advice of Wolston, supra, and focus on the "nature and extent of [this] individual's participation in the particular controversy giving rise to the defamation." The standard to be met is: 1) Did plaintiff voluntarily thrust himself into the vortex of this particular controversy? 2) What was the nature and extent of his participation in this particular controversy? 3) Did he encourage the public's attention in an attempt to influence the outcome of this particular controversy?

The defendant presented the testimony of three news directors of local TV stations and a reporter for a local newspaper. All four covered plaintiff's wife's political campaign for Congress. Collectively they show that plaintiff participated in his wife's news conferences. He answered questions put to her and amplified on answers given by her in response to questions by the media. The newspaper reporter stated that in a 30-minute telephone interview with the candidate the plaintiff "started answering the questions that I was asking . . . [He] talked more than she did." The consensus was that he was "an active participant" in those conferences.

We have concluded that plaintiff voluntarily thrust himself into the vortex of this political campaign. He was an active participant in his wife's news conferences and by his own admission he "played an important part" in her 1976 and 1978 campaigns. One reporter characterized his participation as: "He made his presence known, and his opinion known." It is clear that plaintiff voluntarily sought attention in this particular controversy in an attempt to influence the outcome in favor of his wife. The trial court correctly concluded plaintiff was a "public figure."

2. Plaintiff's second and third enumerations address the sufficiency of the evidence to sustain the verdict and judgment. Having determined that plaintiff was a "public figure" for the purpose of this alleged defamation we next turn to the application of the New York Times' rule of whether this publication was made with "actual malice." "Malice" in the New York Times' context is not the intentional doing of a wrongful act without cause or excuse, and with

intent to inflict injury but instead, what is required is "clear and convincing proof that a defamatory falsehood alleged as libel was uttered with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" Rosenbloom v. Metromedia, 403 U. S. 29, 30, supra. "Factual error, content defamatory of official reputation, or both, are insufficient to warrant an award of damages for false statements unless 'actual malice' — knowledge that statements are false or in reckless disregard of the truth — is alleged and proved." New York Times v. Sullivan, 376 U. S. 254 (c), supra. "In order that it can be found that a defendant, within the meaning of *New York Times,* acted in 'reckless disregard' of whether a defamatory statement which he made about a public [figure] is false or not, there must be sufficient evidence to permit the conclusion that the defendant had serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U. S. 727 (88 SC 1323, 20 LE2d 262). The Supreme Court, in Gertz and St. Amant, supra, emphasized a necessity "for a showing that a false publication was made with a 'high degree of awareness of . . . probable falsity.'" 390 U. S. at 731 and 418 U. S. at 332. Such evidence is lacking in the instant case. A plaintiff has the burden of proof of "actual malice." Wolston v. Reader's Digest Assn., 443 U. S. 157, 160, supra. The jury was properly instructed and found for the defendant. The evidence of record falls short of showing Blanchard's reckless disregard for the accuracy of his statement about Hemenway. We find the jury verdict to be supported by the record.

*Judgment affirmed. Shulman, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 8, 1982 —
REHEARING DENIED OCTOBER 1, 1982 —

John D. Hemenway, *pro se.*
*William C. Calhoun,* for appellee.
*W. Hale Barrett, David E. Hudson,* amicus curiae.