**Bucky WOY, Plaintiff,**

v.

**Ted TURNER, Defendant.**

**Civ. A. No. C80–1595A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 28, 1983.

Randall R. Moore, Dallas, Tex., Frank L. Wilson, III, Atlanta, Ga., for plaintiff.

Dennis J. Webb, Douglas W. Smith, Atlanta, Ga., for defendant.

## ORDER OF COURT

HORACE T. WARD, District Judge.

Plaintiff William "Bucky" Woy instituted this civil action seeking damages against defendant Ted Turner for libel and slander pursuant to O.C.G.A. § 51–5–1 et seq. (*Ga. Code Ann.* § 105–7) and for tortious inter-

ference with existing and prospective business and contractual relations.[1] Defendant previously moved for partial summary judgment seeking a ruling that plaintiff was a "public figure" at the time of the incident complained of and that, as a result, he must prove actual malice to prevail on the issue of defamation.[2] By Order of December 17, 1981, this court held that: 1) a non-media individual defendant, whose allegedly defamatory comments were made on telecast, could be accorded rights provided in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), where the plaintiff was found to be a public figure, and 2) genuine issues of material fact existed regarding the voluntary nature and extent of plaintiff's participation in the public controversy and public figure status, precluding summary judgment on the public figure issue. *See Woy v. Turner*, 533 F.Supp. 102 (N.D.Ga.1981).

This case came on for trial on May 24, 1983, and after the close of all of the evidence, the defendant moved for a declaration that plaintiff was a public figure at the time defendant made the alleged defamatory statements. Based on the briefs and oral argument of the parties, and on the evidence adduced at trial, the court concluded that plaintiff was a "public figure" at the time of the incident complained of for the reasons set forth below.

At the outset, the court notes that it continues to stand on its original ruling that a public controversy existed and that the *New York Times* standard is applicable to a non-media individual defendant. In the *New York Times* case, the Supreme Court held that a state cannot award damages to a "public figure" for defamatory falsehoods unless the official proves "actu-

---

1. After Bob Horner's first season with the Atlanta Braves National League Baseball Club, plaintiff acted as his agent in negotiations for a new contract with Bill Lucas, the general manager and representative of the Braves. Prior to the resolution of the heated contractual dispute, Mr. Lucas died. Subsequently, defendant Ted Turner, owner of the Braves, made statements to the press and on a telecast to the effect that plaintiff's tactics and accusations regarding the character of Mr. Lucas during the course of the

negotiations had contributed to or caused Mr. Lucas' death.

2. This standard was set forth in the case of *The New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and defines the level of constitutional protection accorded to a person who makes alleged defamatory statements about a public person.

al malice." [3] The *New York Times* standard formulated for defamatory falsehoods published about "public officials" was later extended to "public figures" in the case of *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In that case the court defined a "public figure" as: "(a) One who commands a substantial amount of public interest by his position alone, or (b) One who voluntarily thrusts himself into the 'vortex' of an important public controversy."

In the instant case, the defendant, in an attempt to show that Bucky Woy was a "public figure" due to his special prominence, introduced evidence that Woy used the media (i.e., the press, television, and sports magazines) constantly to promote himself as a sports agent and to express his views on a wide variety of subjects. Evidence was also presented showing that Woy represented several celebrity clients and used the media in the representation of those clients. Woy also co-authored a book about himself entitled, *Sign Em Up, Bucky.* In support of his argument that Woy was a "public figure" due to his special prominence, defendant cited several cases to demonstrate the type of activity which would typically generate the classification of one as a "public figure." *See, e.g., Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3rd Cir.1979) (professional football player held to be public figure as to his playing career); *Rosanova v. Playboy Enterprises, Inc.,* 411 F.Supp. 440, *aff'd,* 580 F.2d 859 (5th Cir.1978) (individual with reputed association with organized crime was public figure despite not having sought such status); *Vandenburg v. Newsweek, Inc.,* 507 F.2d 1024 (5th Cir. 1975) (college track coach was public figure for some issues); *Curtis Publishing Co. v. Butts, supra* (football coach was public figure due to his position and due to his

easy access to media for purpose of broadcasting a response or counter-argument). However, plaintiff disagreed with the assertion that he was a public figure due to his special prominence and has elicited testimony from a sports journalist who had not heard of plaintiff until the time of the contractual dispute leading to the incident complained of in this lawsuit.

Defendant further contends that Woy is a "public figure" because he voluntarily thrust himself into the forefront of the public controversy at issue. Defendant introduced evidence that plaintiff was in contact with the media numerous times regarding the contractual dispute, several times upon his own initiation. Defendant relies on several cases that found a plaintiff to be a public figure because he voluntarily thrust himself into the public controversy. *See, e.g. Hemenway v. Blanchard,* 163 Ga.App. 668, 294 S.E.2d 603 (1972) (plaintiff was active participant in his wife's news conferences and he made his presence and opinions known regarding the particular election); *Williams v. Church's Fried Chicken, Inc.,* 158 Ga.App. 26, 279 S.E.2d 465 (1981) (plaintiff was declared public figure due to, among other reasons, his speaking freely of receiving publicity for various arrests and his participation in many well publicized demonstrations and press conferences); *Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287 (D.C.Cir.1980) (supermarket executive was public figure because he aggressively publicized novel store policies); *Yiamouyiannis v. Consumer's Union of United States, Inc.,* 619 F.2d 932 (2nd Cir.1980) (fluoridation expert was public figure because he thrust himself into the controversy by seeking national publicity).

Plaintiff argues that he is a private person who was thrown into the public contro-

---

**3.** "Actual malice" is defined as the issuance of a statement with knowledge of its falsity or with reckless disregard for whether the statement is true or false. *The New York Times v. Sullivan, supra.* Furthermore, in order to find that the defendant acted with reckless disregard of whether the statements were true or false, plaintiff must prove that a false statement was made with a high degree of awareness of its probable falsity by the defendant or there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his statement or statements. *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

versy when he received media attention due to his professional service to a client associated with the public controversy. Plaintiff relies basically on three Supreme Court cases, where the plaintiff was held not to be a public figure. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (attorney who was prominent member of the bar and a public activist and who accepted employment in a case predictably receiving media attention held not to be a public figure); *Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1975) (wife of wealthy businessman who was prominent society member receiving media attention and who held press conferences on her widely publicized divorce trial held not to be public figure); *Wolston v. Reader's Digest Association, Inc.,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979) (admitted Russian spies' nephew who was cited for contempt for failure to appear before the 1957–58 grand jury investigations knowing that media attention would result held not to be public figure).

■ The court finds that while plaintiff Bucky Woy has regularly used the media in promoting himself and in the representation of various clients, the court was not convinced that Woy was well known in the "community" based on his general fame or notoriety as a sports agent to qualify as a public figure based on special prominence.

■ On the other hand, the court does conclude that Woy is a public figure because he voluntarily thrust himself into the forefront of a public controversy—the contractual dispute between Bob Horner and the Atlanta Braves. In making the determination that Woy is a public figure under this standard, the court considered the three prong test set out in *Hemenway v. Blanchard, supra:*

a. Did the plaintiff voluntarily thrust himself into the vortex of this particular controversy?

b. What was the nature and extent of the plaintiff's participation in the particular controversy? and

c. Did the plaintiff encourage the public's attention in an attempt to influence the outcome of a particular controversy?

163 Ga.App. at 671, 294 S.E.2d 603.

Upon careful consideration of the aforementioned factors after listening to the testimony in this case, oral argument of counsel, and viewing the various documents in evidence, the court finds that during the period of the contractual dispute up until the time when the defendant made the alleged defamatory statements (January–June 1979), the plaintiff had voluntarily thrust himself into the forefront of the contractual dispute. The plaintiff was in contact with the press, television stations and sports magazines regarding the contractual dispute, several times upon his own initiation.

Furthermore, Woy was not just an agent who never communicated with the media and who was thrown into the controversy because of the legal representation of his client, Bob Horner. Woy made himself readily available for interviews and media attention, and even actively solicited media attention on a regular basis in January and February of 1979 and still frequently thereafter. One such instance, among others, was a press conference initiated by Woy in an attempt to "lay the contractual dispute to rest." The evidence established that Woy was as much a major participant in the public controversy as Ted Turner and Bob Horner (possibly more), and much of this was due to Woy's own efforts.

Moreover, it is undisputed that Woy had used the media many times to promote himself and to express his views on various subjects. Likewise, during the period of the contractual dispute (January to June, 1979), Woy knew how to and did use the media on a regular basis in an attempt to influence the outcome of the contractual dispute.

■ For the foregoing reasons, the court concludes that the plaintiff, Bucky Woy, was a public figure during the time of the contractual dispute between Bob Horner and the Atlanta Braves and at the time Ted

Turner issued the statements to the news media concerning the death of Bill Lucas. Therefore, the court concluded that the plaintiff would be entitled to recover damages on his claim of libel and slander only upon a showing that the statements in question were made with "actual malice."

The above ruling was issued orally from the bench on May 28, 1983 during the course of the trial.