68782, 68783. DeBERRY v. KNOWLES; and vice versa.
(321 SE2d 824)

BIRDSONG, Judge.

Defamation. Brondon DeBerry was employed as a deputy warden of the Floyd County Correctional Institution. Roy Knowles was one of five commissioners of Floyd County and as such was DeBerry's nominal employer. While DeBerry was working as deputy warden, telephonic reports as well as personal contact by unnamed citizens of the county were made to Knowles in his capacity as commissioner that DeBerry was conducting himself in an inappropriate manner as deputy warden. Knowles also received a letter signed by unnamed guards at the correctional institution as well as complaints from one or more prisoners. Apparently at some time previous to these reports of alleged unfitness, DeBerry had authorized prisoners on a work detail to cut down a tree that disputedly was on private property. As a result

of the ensuing complaint from the landowner to Knowles, Knowles and DeBerry were involved in some harsh conversations. Knowles sought to have DeBerry removed as assistant warden because of insubordination. The other commissioners would not second Knowles' motion and no action was taken on the motion to fire DeBerry.

Knowles rendered a report, based upon these reports of alleged unfitness, to personnel of the state Office of Offender Rehabilitation. An investigation of the numerous complaints ensued. That investigation completely exonerated DeBerry. Because of the pressures of the innuendos and unsupported complaints, DeBerry was subjected to personal and family emotional pressure. He ultimately requested and was granted a transfer to another county job and later voluntarily left that job to follow employment with private enterprise.

As a result of the investigation into the tree cutting incident and the second investigation into alleged misconduct with prisoners, guards and inmate relatives, DeBerry brought a defamation action against Knowles. He alleged that Knowles communicated unfounded reports to the state Office of Offender Rehabilitation, other county commissioners, the district director of the Office of Offender Rehabilitation, and members of a radio station and the general public through a radio broadcast. DeBerry alleged that as a result of the investigations, he was denied promotion to warden and was forced from his employment. DeBerry alleged actual malice in Knowles' actions and contended in his pleadings that Knowles used his official position as a cloak in order to defame DeBerry to DeBerry's financial injury.

After an extended jury trial, the trial court granted a directed verdict in favor of Knowles on all counts except the one alleging dissemination and publication through the radio program. The jury found actual malicious defamation in that report and while declining to award DeBerry special, compensatory or nominal damages, awarded DeBerry $1,000 "punitive" damages.

DeBerry brings his appeal urging error in the grant of directed verdict as to the ten counts in which the specifics were alleged of the defamatory remarks made to other officials. Knowles has filed his cross-appeal contending error in the grant of punitive damages in the total absence of general damages. These two related appeals are here consolidated. *Held*:

We commence our consideration of these appeals with the observation that both parties agree DeBerry was a public official when the remarks were made and that Knowles was acting as a county commissioner, i.e., as a public officer. DeBerry seeks to avoid the limitations placed upon comments about a public official in the performance of his duties by arguing that Knowles used his official position as a cloak to cover personal malice which infected the investigations which Knowles precipitated and which resulted in DeBerry's failure of pro-

motion and ultimate separation from his job as deputy warden.

In his complaint, DeBerry alleged in the first count and thereafter by incorporation in the remaining counts that Knowles caused two investigations to be conducted by uttering to numerous third parties a series of false, malicious and defamatory statements reflecting on DeBerry's character. Thereafter in Counts I through IX and Count XI, each count separately specified the defamatory allegation and the third party to whom the information was directed. Count I alleged publication to the deputy commissioner of the Department of Offender Rehabilitation. The next seven counts were related to several alleged defamatory statements made on the same day to the same individual. These remarks were made when Knowles aired the numerous complaints that had been brought to his attention with the district director of the northern division of the Department of Offender Rehabilitation so that these allegations could be investigated by the director. Count IX alleged accusations of reporting to work intoxicated made to other members of the county commission. Count XI was an alleged defamatory report to the Floyd County manager that DeBerry had been abusing prisoners. Count X asserted that Knowles made an inaccurate statement on a radio interview that DeBerry had been fired when Knowles knew that DeBerry had requested transfer and had not been fired. After being challenged telephonically by DeBerry during that program, Knowles did not correct the statement.

It is not contested that DeBerry voluntarily left his employment with the county. Also there is unrebutted evidence that the content of the oral complaints by third parties to Knowles concerning DeBerry were of a nature to require an investigation. Lastly, it was established that once DeBerry had been cleared in the investigations, he was eligible for the job as warden and would have been considered for such had he not left the correctional institution for other employment.

OCGA § 51-5-7 provides that statements made in the performance of a public duty are deemed privileged. Such statements will not support an action for libel or slander unless it is shown that the privilege was used as a cloak for venting private malice. OCGA § 51-5-9. The facts of this case show that Knowles acted in his capacity as a county commissioner while he was officially occupying that office. DeBerry did not present evidence to refute such a contention by Knowles. Knowles offered unrebutted evidence that he received numerous complaints, as county commissioner, from citizens of the county, either by telephonic report or in personal conversation, with complaining citizens. He discussed some of the complaints with other members of the county commission or with responsible officials of the state Department of Offender Rehabilitation who had a direct and necessary interest in the performance of duties by a correctional officer. The only other person alleged in the complaint to have received

information was the county manager, again an employee of the county having an interest in county agency operations. Statements and reports made in response to inquiries or involved in the execution of official duties likewise are privileged where the inquirer or recipient of the report is one officially interested in the matter. *Whitley v. Newman*, 9 Ga. App. 89 (4) (70 SE 686). Knowles' disclosures were made as an employer to other employers or employees or public officials who had a need to know by virtue of their duties. Thus these allegations which resulted in the two investigations were privileged. Therefore ordinarily a cause of action could not lie for their utterance. *Jones v. J. C. Penney Co.*, 164 Ga. App. 432, 433 (297 SE2d 339).

As indicated above, DeBerry seeks to circumvent the privileged nature of Knowles' disclosures by arguing that Knowles used his "privilege" as a cloak for his actual malice in seeking DeBerry's discharge. However, we can find no evidence in the record that clearly and convincingly shows that Knowles knew or had reason to know that the contents of the reports made to him were false or that he made the reports to others with utter disregard of whether the reports were true. In fact the evidence shows that those charged with the responsibility of conducting the investigation concluded that the facts reported would require investigation. At best, DeBerry established that after the investigations were concluded he had been cleared of any wrongdoing. This is a far cry from a showing that Knowles knew that the reports made to him were false or that he repeated the reports in disregard of doubts that they may have been meritorious.

It was stipulated that both Knowles and DeBerry were "public" figures. Thus to be actionable, Knowles' otherwise privileged communications must have been uttered with actual malice. New York Times v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686). Within the context of that case, malice is not relegated to the intentional doing of a wrongful act without cause or excuse, and with intent to inflict injury but rather involves a showing by clear and convincing proof that a defamatory falsehood alleged as libel was uttered with knowledge that it was false or with reckless disregard of whether it was false. Thus there must be convincing evidence to warrant a conclusion that Knowles had serious doubts as to the truth of the reports he passed on to those having an official interest in the contents of such reports. *Hemenway v. Blanchard*, 163 Ga. App. 668, 671-672 (294 SE2d 603). Knowles offered proof that all the reports came to him from sources he had no reason to dispute or doubt. He did not admit nor was it shown by DeBerry that Knowles had reason to question or disbelieve any of these reports. He merely relayed them to persons who could evaluate the truth or falsity of the reports. This shifted the burden of proof to DeBerry to prove that Knowles acted with actual malice. As indicated hereinabove, DeBerry merely showed

that he had been cleared; he did not show that the reports were without any basis or that Knowles suspected the lack of basis. Under such facts, the trial court did not err in granting a directed verdict as to Counts I-IX and XI. *Murray v. Williams*, 166 Ga. App. 865, 867 (305 SE2d 502).

DeBerry further seeks to avoid the consequences of the privileged nature of Knowles' publication by arguing that his complaint included specific written allegations that Knowles made publication to "third persons" not included in the privileged class. DeBerry presented evidence through Knowles that Knowles had discussed some of the matters that had been investigated with private citizens. Thus DeBerry argues that by allegation of "third parties" and admission of evidence without objection, the pleadings had been modified to include persons other than those delineated in the ten counts to which the trial court directed the verdict. The trial court refused to consider these arguments on the ground that a pretrial order had been entered in the case and the issues were frozen to those recognized and limited in the order.

We find ample support for the conclusion of the trial court. An examination of the pleadings discloses that though the pleadings mentioned disclosure to "certain third parties," the pleadings then limited that denomination by stating that the third parties more specifically were those listed in the ten counts under discussion. Moreover, the pretrial order listed witnesses to be called and none of the third parties now presented by DeBerry as constituting that otherwise unidentified class were listed, with the exception of one, and that witness was not called. The pretrial order specifically limited the issues to those raised by the pleadings as supported by the evidence. In the face of these facts, we also conclude that the intent of the pleadings was to prove the defamatory remarks were made to those individuals specifically named in the ten counts and not to bring other non-specified third parties into the trial.

On the face of the record, it is clear that DeBerry was seeking to show that Knowles had exceeded the scope of his office by discussing the reports with persons not in an official office and not entitled to the contents of the reports. It also is clear that the purpose of this evidence was to prove an alleged fact, i.e., that even though Knowles was acting in an official capacity, he violated the powers of his office by discussing the reports with unauthorized persons thus manifesting actual malice in his actions, the exception to the privileged nature of the publication. It was only after the trial court had indicated the nature and extent of the charge that DeBerry sought to extend the evidence offered and admitted to show malice to new counts of publication.

OCGA § 9-11-15 authorizes a party to amend his pleadings as a

matter of course and without leave of court at any time prior to the entry of a pretrial order. In this case a pretrial order was entered and governed the subsequent issues that could be litigated. In the face of a limiting pretrial order where a question of precluding issues is raised, the matter is within the discretion of the trial judge. *Mullinax v. Shaw*, 143 Ga. App. 657, 661 (239 SE2d 547). In this case, the evidence of third persons other than those named in the pleadings was offered and admitted for the purpose of showing the existence or non-existence of malice but not to add additional counts of defamation. To allow such an amendment after all the evidence places the defendant Knowles at a great disadvantage as he defended against an issue of malice and not against additional counts of defamation. We find no abuse of discretion in the action of the trial court in refusing to amend the pleadings after the evidence was presented for a purpose different than that belatedly contended by the appellant DeBerry. *Mullinax v. Shaw*, supra.

In his cross-appeal, Knowles contends that the trial court erred in entering a monetary judgment for punitive damages in the absence of a jury award of nominal, general, or compensatory damages.

There is merit in this contention. In its charge the trial court informed the jury it could return compensation for the injury done and this was to be determined by proof of damages reduced to a monetary figure or value. The jury was charged that if there is injury but it is minimal or not capable of being reduced to a definite amount, then nominal damages could be returned. If the jury found injury to the peace, happiness or feelings, then the jury could return compensatory damages to be determined by the enlightened conscience of the jurors. Further, the jury was told it could return *additional* damages to deter a wrongdoer. These additional damages were denominated as punitive damages. Each of these forms of damages had been made the subject of a request to charge.

It is the law of this State that failure to charge in the exact language requested, where the charge given substantially covered the same principles, is not error. *Jones v. Tyre*, 137 Ga. App. 572, 575 (224 SE2d 512). Thus we are satisfied the jury was aware of its responsibilities and its options. There is at best a paucity of evidence as to monetary damages in this case. DeBerry voluntarily left his employment. He was engaged in an occupation that was more remunerative than the one he held with the county. His wounded feelings could have been considered as transitional and short-lived and not even necessarily the sole product of Knowles' actions. No monetary losses were proven to be the result of these alleged wounded feelings. Thus we cannot fault the jury for not returning monetary, general or compensatory damages nor can we attribute this failure to the jury's not knowing it could return such damages. It was clearly instructed that

punitive damages were "additional."

The jury having elected not to return any monetary general damages, it is improper to award exemplary or punitive damages. *Haugabrook v. Taylor*, 225 Ga. 317 (168 SE2d 162); *Delta Air Lines v. Isaacs*, 141 Ga. App. 209, 212 (4) (233 SE2d 212). Therefore, it was error for the trial court to enter the judgment of $1,000 punitive damages based upon the verdict of the jury as to Count X of the complaint.

*Judgment affirmed in Case No. 68782; reversed in Case No. 68783 insofar as it awards punitive damages. Quillian, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 13, 1984.

*Christopher A. Frazier*, for appellant.
*Wade C. Hoyt III*, for appellee.