## 56786. SAVANNAH NEWS-PRESS, DIVISION SOUTHEASTERN NEWSPAPERS CORPORATION v. WHETSELL.

BANKE, Judge.

This case involves a libel action filed by the appellee, John E. Whetsell, against the appellant, Savannah News-Press, Division Southeastern Newspapers Corporation. The trial judge denied Savannah News-Press' motion for summary judgment, and we granted its request for interlocutory appeal.

The Savannah News-Press, in an article written by one of its staff reporters, reported that Mr. Whetsell, the mayor of Twin Cities, Georgia, had been arrested and charged with criminal trespass and cattle rustling.[1]

---

[1]There is no such crime in Georgia; rather, cattle theft would fall under Code Ann. § 26-1802, theft by taking.

Actually, the warrant charged him with trespassing on private property and shooting at cattle (with a tranquilizer dart gun). Whetsell, who does not contest the accuracy of the criminal trespass charge, wrote the Savannah News-Press and demanded a retraction of the cattle rustling report. The newspaper published a correction stating that this portion of the news story was based on erroneous information. Soon thereafter, Mayor Whetsell sued to recover for damages which he had allegedly sustained as a result of the libelous article. *Held:*

1. New York Times Co. v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964) established that public officials can recover in libel actions against critics of their official conduct only when the evidence shows that the libellant acted with "actual malice." A statement is made with actual malice whenever it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, supra, 376 U. S. at 279. The majority opinion expressly refrained from determining the outside parameters of the "'official conduct' concept" since such a determination was not necessary under the facts of that case. New York Times Co. v. Sullivan, supra, 376 U. S. at 283 (fn. 23).

To this date, the Supreme Court has not spoken on whether a lesser standard of proof would apply in situations where the public official was defamed with regard to a private matter. However, there are indications that this would be their ruling since First Amendment protection of the press is not as paramount a concern in such situations. See New York Times Co. v. Sullivan, supra, 376 U. S. at 301 (Justice Goldberg's special concurrence); Gertz v. Robert Welch, Inc., 418 U. S. 323 (94 SC 2997, 41 LE2d 789) (1974). See also Restatement 2d, Torts 2d, §§ 580A, 580B (1977).

In this case, Whetsell's status as a public official is not disputed, but a question does exist as to whether his trespass onto another's property to retrieve lost cows has sufficient connection to his role as a public official that the New York Times "actual malice" standard should apply. The American Law Institute, in considering this sort of situation, wrote: "The extent to which a statement as to

his [the public official's] private conduct should be treated as affecting him in his capacity as a public official cannot be reduced to a specific rule of law. The determination depends upon both the nature of the office involved, with its responsibilities and necessary qualifications, and the nature of the private conduct and the implications that it has as to his fitness for the office." Restatement 2d, Torts 2d, § 580A, Comment (b) (1977).

The authority and duties of the office of mayor permit the occupier of that office to exercise a powerful role in the administration of municipal government. While the crime of criminal trespass is only a misdemeanor (and theft by taking, "cattle rustling" here, is a felony), it cannot be denied that news that a mayor has wilfully violated state law, albeit in the conduct of his private affairs, bears a close connection to his fitness for public office. Thus, Savannah News-Press is entitled to the additional protection from liability guaranteed by New York Times Co. v. Sullivan, supra. Accordingly, in order for Whetsell to recover on his claim, his evidence must show that the newspaper reported the erroneous cattle rustling charge with "actual malice."

2. In addition to the pleadings, four depositions were submitted to the trial judge for his consideration in ruling on Savannah News-Press' motion for summary judgment. The persons deposed were Mayor Whetsell; Caroline Bernd, the reporter who wrote the story; Deputy Sheriff Cardell Mills, the person interviewed by Ms. Bernd in connection with the story; and Donald Harwood, the general manager of the Savannah News-Press.

These depositions showed that in the late afternoon of August 1, 1975, a person identifying himself as Deputy Sheriff Cardell Mills called the Savannah News-Press and informed them that Mayor Whetsell had been arrested on a warrant. Ms. Bernd, who maintained the paper's Statesboro office, was called and told to research the story. Ms. Bernd testified that she called the Sheriff of Emanuel County in order to check out the story, but was unable to reach him since his office was already closed for the day. She testified that the newspaper then gave her Deputy Mills' name. She called him at home, and he informed her that he had been "in on" serving the warrant

charging the mayor with criminal trespass and cattle rustling. She also testified that she tried to call Mayor Whetsell at home but that the person answering the phone told her that he was not there. In his deposition, Mayor Whetsell denied that such a phone call was made to his home and stated that he was home the entire evening. Ms. Bernd also testified that she had no prior acquaintance with Whetsell and bore him no ill will and had no reason to think that others might.

Deputy Mills testified that he did not "tip" the Savannah News-Press about the arrest but said he has since learned that another person using his name gave the "tip." Deputy Mills acknowledged receiving Ms. Bernd's call and talking with her about the charges. He also testified that he did not ask why or express any surprise that she had called him in connection with the incident. He denied that he could have told her what the charges were since he had never examined the warrants and really didn't know what they were. At another point in his deposition, he testified that the term cattle rustling might have been mentioned in their conversation but denied that he would have brought it up. He also said that he knew that on the day of the incident, the justice of the peace had discussed a cattle rustling charge with the sheriff and that he learned later that ". . . the sheriff told [the justice of the peace] that he couldn't get [Whetsell] for cattle rustling because they didn't catch them with no cows. . ."

3. In St. Amant v. Thompson, 390 U. S. 727, 732-733 (88 SC 1323, 1326, 20 LE2d 262, 267) (1968), a case similar in many respects to the one now before us, the Supreme Court, in finding no reckless disregard for the truth, held: "Nothing . . . indicates an awareness by [the defendant] of the probable falsity of [the informer's] statement about [the plaintiff]. Failure to investigate does not in itself establish bad faith. New Yok Times Co. v. Sullivan, supra, at 287-288 . . . That he [the defendant] failed to realize the import of what he broadcast — and was thus 'heedless' of the consequences for [the plaintiff] — is similarly colorless. Closer to the mark are considerations of [the informer's] reliability."

Except for the direct conflict between the testimonies

of Ms. Bernd and Deputy Mills, there is nothing contained in any of the four depositions tending to show that the Savannah News-Press "entertained serious doubts as to the truth of [its] publication" (St. Amant v. Thompson, supra, 390 U. S. at 731) or a "high degree of awareness of . . . probable falsity" (Garrison v. Louisiana, 379 U. S. 64, 74 (85 SC 209, 13 LE2d 125) (1964)). Thus, Mayor Whetsell can recover only if the evidence proves with "convincing clarity" that Ms. Bernd knew that he had not been charged with cattle rustling at the time she wrote her story. See New York Times Co. v. Sullivan, supra, 376 U. S. at 285-286.

Marshalling the evidence as to actual knowledge, there is Ms. Bernd's testimony that she reported the story exactly as it was told to her by Deputy Mills, and there is Deputy Mills' testimony that he did not tell her the nature of the charges against Mayor Whetsell. Evidence that someone tipped the newspaper about the cattle rustling charge does not help reconcile the conflict in their testimonies since, apparently, Deputy Mills did not give the tip. Mayor Whetsell's denial of Ms. Bernd's claim that she called his house only casts doubt on her claim that she tried to investigate the story thoroughly; but, as already shown, in the absence of any reason to believe Deputy Mills was an unreliable source, she had no duty to investigate. St. Amant v. Thompson, supra.

Viewing all the evidence most favorably to Mayor Whetsell, it is clear that while this evidence is sufficient to create an issue on the question of knowledge, it falls short of establishing clear and convincing proof of actual malice on the part of Savannah News-Press.

4. In *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49, 57-58 (230 SE2d 45) (1976), Judge Webb, writing for the Court of Appeals, adopted the ruling of Time, Inc. v. McLaney, 406 F2d 565, 571-572 (5th Cir. 1969) that "Where . . . it is plain that the record has been fully developed by depositions and affidavits on a motion for summary judgment, and such record demonstrates that, construing all of the facts and inferences to be drawn therefrom in favor of the party against whom the judgment is entered, he would not be entitled to have a jury verdict stand, we have not hesitated to hold that the

grant of summary judgment is proper." See also Bon Air Hotel, Inc. v. Time, Inc. 426 F2d 858, 865 (5th Cir. 1970); Washington Post Co. v. Keogh, 365 F2d 965, 968 (D. C. Cir. 1966). Cf. *Prairieland Broadcasters of Ga., Inc. v. Thompson,* 135 Ga. App. 73 (217 SE2d 296) (1975). Under this statement of the law, Savannah News-Press was entitled to summary judgment; and it was error for the trial judge to deny its motion.

In reversing this judgment, this court is not insensitive to the plight of persons such as Mayor Whetsell who find themselves the subject of news stories containing inaccurate statements of fact about them. However, the balance between the competing interests involved has already been struck by the United States Supreme Court. They explained their position in Gertz v. Robert Welch, Inc., supra, 418 U. S. 342-343, as follows:

"This standard [the New York Times standard of actual malice] administers an extremely powerful antidote to the inducement to media self-censorship of the common-law rule of strict liability for libel and slander. And it exacts a correspondingly high price from the victims of defamatory falsehood. Plainly many deserving plaintiffs, including some intentionally subjected to injury, will be unable to surmount the barrier of the New York Times test. Despite this substantial abridgment of the state law right to compensation for wrongful hurt to one's reputation, the Court has concluded that the protection of the New York Times privilege should be available to publishers and broadcasters of defamatory falsehood concerning public officials and public figures. New York Times Co. v. Sullivan, supra; Curtis Publishing Co. v. Butts, supra. We think that these decisions are correct, but we do not find their holdings justified solely by reference to the interest of the press and broadcast media in immunity from liability. Rather, we believe that the New York Times rule states an accommodation between this concern and the limited state interest present in the context of libel actions brought by public persons."

*Judgment reversed. Deen, C. J., and Smith, J., concur.*

ARGUED OCTOBER 4, 1978 — DECIDED
MARCH 8, 1979.

*Gignilliat & Abbott, Thomas H. Gignilliat, Pierce, Ranitz, Mahoney, Forbes & Coolidge, Morton G. Forbes,* for appellant.

*Oliver, Maner & Gray, James Pannell, Thomas S. Gray, Jay Carroll Cox,* for appellee.