**Lee Roy SMITH, Plaintiff,**

v.

**Dal TURNER, Individually and in his capacity as Chairman of the Clayton County Board of Commissioners; John King, individually and in his capacity as Chief County Administrator of Clayton County, Georgia; Byron Ray Pate, individually and in his capacity as Assistant County Administrator of Clayton County, Georgia; Charles M. Workman, individually and in his capacity as Chief Appraiser and member of the Board of Tax Assessors, Defendants.**

Civ. A. No. 1:89–CV–0907–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 25, 1991.

Lee Sexton, Sexton, Turner & Moody, Jonesboro, Ga., for plaintiff.

Larry A. Foster, Foster & Foster, Jonesboro, Ga., Thomas Ryan Mock, Jr., Carey Edward Fox, Freeman & Hawkins, Atlanta, Ga., for defendants.

**ORDER**

FORRESTER, District Judge.

This matter is before the court on defendants Turner, King, Pate and Workman's motion for summary judgment on plaintiff's complaint.[1] Plaintiff brought this action on May 2, 1989 seeking damages and injunctive relief under 42 U.S.C. §§ 1983, 1985 and 1988 for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and seeking damages for slander under state tort law.

In Count One of the complaint, plaintiff alleges that defendants "wilfully, maliciously, and deliberately conspired" to deprive plaintiff of his continued employment and office with Clayton County, Georgia. Count Two alleges an agreement to engage in a course of conduct calculated to "humiliate, embarrass, vilify and ridicule" plaintiff with the "sole, expressed purpose" of depriving plaintiff of his employment and office. Count Three is a state tort law damages claim for slander under O.C.G.A. § 51–5–4(a)(3). Count Four alleges a conspiracy by the defendants to "circumvent the democratic process" and wilfully deprive the citizens of Clayton County, Georgia of an independent and autonomous Board of Tax Assessors. Plaintiff alleges this conspiracy has injured him in violation of the Constitution and 42 U.S.C. §§ 1983, 1985, and 1988. He seeks monetary damages and an injunction prohibiting defendants from interfering with plaintiff's performance of his statutory duties.

## I. STATEMENT OF THE CASE

Plaintiff Lee Roy Smith was appointed to the Clayton County Board of Tax Assessors for a six year term beginning January 1, 1988. Complaint, ¶¶ 1, 2. In January or February of 1988, plaintiff was elected chairman of the three person board. Smith Depo., p. 21. Defendant Dal Turner was elected Chairman of the Clayton County Board of Commissioners of Clayton County, Georgia in the fall of 1988 and took

---

1. Defendants filed a counterclaim for costs and attorney's fees with their answer, alleging that plaintiff's suit was frivolous and seeking dismissal of the complaint. That claim is not a subject of the motion now before the court.

office on January 1, 1989. Turner Aff., ¶ 2.

Shortly after taking office, Turner went to Smith and demanded that Smith resign his position as Chairman of the Board of Tax Assessors. Turner Aff., ¶ 6. When Smith refused, Turner declared his intent to do everything he could to remove Smith from office. Turner Depo., p. 62. In spite of lobbying efforts by Turner to have defendant Workman, also a member of the Board of Tax Assessors, elected as chairman, plaintiff Smith was elected to a second one year term on January 26, 1989. Turner Depo., pp. 41, 62–63.

Turner has testified that a subsequent investigation by the Board of Commissioners revealed mismanagement of the Tax Assessor's Office and misconduct by the plaintiff. Turner Aff., ¶ 7. The Board of Commissioners then hired the accounting firm of Touche Ross & Company to conduct a limited audit of the Tax Assessor's Office. Turner Aff., ¶ 8. The results of the report were made public, and, though the audit did not mention the plaintiff by name, defendant made statements to the press and others that he believed Smith was incompetent to serve as a tax assessor. Turner Aff., pp. 85, 86.

When plaintiff filed this action in May of 1989 he still held his office as Chairman of the Board of Tax Assessors. On July 14, 1989, Smith received notice from the Clayton County attorney of a hearing before the Board of Commissioners for the purpose of removing him from his position as a member of the Board of Tax Assessors—an action that would also have effectively removed him as chairman. Turner Aff., ¶ 10, Exhibit B. Smith obtained a temporary restraining order from the Superior Court of Clayton County prohibiting the Commission from holding the hearing until Smith was afforded an opportunity for a hearing

before the judge of the Superior Court of Clayton County pursuant to O.C.G.A. § 48–5–295(b). Turner Aff., ¶ 11. After a hearing, Superior Court Senior Judge Whitmire recommended that Smith not be removed from office. Turner Aff., ¶ 12. The Board of Commissioners did not hold a removal hearing. Turner Aff., ¶ 12. Plaintiff Smith continued in office as Chairman of the Board of Tax Assessors until January 9, 1990. Yeargin Aff., ¶ 3.

In January of 1990, Bonnie Yeargin, one of the three members of the Board of Tax Assessors, called a meeting to elect a new chairman for 1990. Smith maintained that only the chairman of the board had the authority to call a meeting and refused to attend. Charles Workman, the third member of the board, attended the meeting and Yeargin was elected chairman. Workman Aff., ¶¶ 11–13; Yeargin Aff., ¶ 6.

Defendants maintain that none of them has taken any further action to remove the plaintiff from his office following the issuance of Judge Whitmire's recommendation. Turner Aff., ¶ 13. Plaintiff Smith alleges that, subsequent to the judge's recommendation, the defendants have continued their conspiracy to disable him from performing his statutory duties as an assessor by denying him access to a county vehicle, by denying him access to the Clayton County computer system, by requiring him to vacate the office from which he conducted county business, and by excluding him from the activities and decision making processes of the Board of Tax Assessors. Smith Aff., ¶¶ 43–46.

## II. CONCLUSIONS OF LAW

### A. *Grounds for Summary Judgment*

Defendants have moved for summary judgment on the complaint.[2] They argue

---

**2.** Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988).

Once the movant carries his burden of asserting the basis for his motion, *see Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552–53, the non-moving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. To survive a motion for summary judgment, the non-moving party must come forward

that plaintiff has failed to state a claim under 42 U.S.C. § 1983 because he has failed to demonstrate the deprivation of a constitutionally protected right or property interest. Defendants also argue that the complaint cannot support a claim for conspiracy under 42 U.S.C. § 1985(3) because plaintiff has failed to state his claim with necessary specificity and has failed to allege a conspiracy motivated by a racially based animus. Defendants contend that plaintiff's state law slander claim should be dismissed because defendant Turner's statements were privileged and because plaintiff has failed to show actual malice. Finally, defendants assert the defense of qualified immunity.

### B. *Plaintiff's Conspiracy Claims*

Count One of the complaint alleges a conspiracy to deprive plaintiff of his position as a member of and his office as Chairman of the County Board of Tax Assessors. Count Two essentially alleges a conspiracy to deprive plaintiff of his position and office by damage to his reputation. Plaintiff asserts these conspiracy claims under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985.[3]

#### 1. Section 1985 Claims

■ To recover under § 1985(3), plaintiff must allege 1) a conspiracy; 2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; 3) an overt act in furtherance of the object of the conspiracy; and 4) that the plaintiff was injured in his person or property. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Byrd v. Clark,* 783 F.2d 1002 (11th Cir.1986).

The language of § 1985(3) that requires the intent to deprive one of equal protec-

tion or equal privileges means that a plaintiff must allege some racial or otherwise class-based discriminatory animus behind the conspirators' action. *Cook v. Houston Post,* 616 F.2d 791, 795 (5th Cir.1980). In *Griffin,* the Supreme Court expressly declined to decide whether § 1985(3) gave a cause of action against conspiracies motivated by invidiously discriminatory intent that was not racially based. 403 U.S. at 102 n. 9, 91 S.Ct. at 1798 n. 9. In *United Brotherhood of Carpenters v. Scott,* the Supreme Court stated that "it is a close question whether 1985(3) was intended to reach any class-based animus other than animus against Negroes and those [Republicans and Northerners] who championed their cause" and, in dictum, declined to extend the reach of § 1985(3) to conspiracies not motivated by racial bias. *United Broth. of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 833–834, 836, 103 S.Ct. 3352, 3358–3359, 3360, 77 L.Ed.2d 1049 (1983).

The Eleventh Circuit has not addressed the question of whether § 1985(3) reaches non-racial political conspiracies. The Fifth, Sixth and Seventh Circuits have for the most part continued to allow actions for purely political conspiracies. *See Galloway v. State of La.,* 817 F.2d 1154, 1159 (5th Cir.1987) (plaintiff must be member of group with inherited or immutable characteristics—e.g., race, gender, religion, or national origin—or show that discrimination resulted from plaintiff's political beliefs or associations); *Hamill v. Wright,* 870 F.2d 1032, 1038 (5th Cir.1989) (class protected by 1985(3) must be characterized by some inherited or immutable characteristic or by political beliefs or associations); *Rice v. Ohio Dept. of Transp.,* 887 F.2d 716 (6th Cir.1989) (holding membership in "discrete group" necessary to support claim under civil rights conspiracy statute but not

---

with specific evidence of *every* element material to his case so as to create a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Brown,* 848 F.2d at 1537.

**3.** Subsection one of § 1985 protects against conspiracies against federal officers. Subsection two protects against conspiracies that are directed at obstructing justice or intimidating parties,

witnesses or jurors involved in United States Courts and proceedings. There is no evidence in the record that plaintiff is asserting a claim under either of these two sections of § 1985. Subsection three protects against conspiracies that seek to deprive others of the equal protection of the laws or of equal privileges and immunities of the laws.

reaching validity of holdings in line of pre-*Scott* cases that a group of persons holding similar political views can be a "class of persons" for purposes of 1985(3)); *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir.1988) ("1985(3) extends beyond conspiracies to discriminate against persons based on race to conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty"), *Cf., Grimes v. Smith*, 776 F.2d 1359, 1363–67 (7th Cir.1985) (§ 1985(3) does not cover alleged victims of nonracial political conspiracies). The Second, Fourth, and Tenth Circuits have followed the dicta in *Scott*. *See Gleason v. McBride*, 869 F.2d 688, 695 (2nd Cir.1989) (must be more than claim that he was discriminated against as an individual because of personal malice resulting from political opposition—complaint must disclose who besides plaintiff may belong to purported class); *Keating v. Carey*, 706 F.2d 377, 386–88 (2nd Cir.1983) ("political parties are not protected groups under section 1985"); *Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155, 163 (4th Cir.1985) (after *Scott*, Republicans as a class are not protected by 1985(3); section does reach non-racial political conspiracies); *Rodgers v. Tolson*, 582 F.2d 315, 317 (4th Cir.1978) (political and philosophical opponents who are outspoken in their criticism of the defendants' political and governmental attitudes and activities do not constitute a cognizable class under section 1985); *Brown v. Reardon*, 770 F.2d 896 (10th Cir.1985) (after *Scott*, wholly political conspiracies are apparently outside the scope of § 1985); *see also, Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1175 (10th Cir.1983) (stating in dictum that, after *Scott*, 1985(3) does not cover conspiracies motivated by a wholly political animus), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984).

Plaintiff Smith has alleged that defendants wanted to remove him from office so they could replace him with a chairman of their choosing. Defendants have testified that they desired to see plaintiff Smith replaced as chairman by defendant Charles M. Workman. Turner Depo., p. 41; King depo., p. 29. However, the only evidence of class-based animus plaintiff has offered is the statement that he is a Democrat and that defendants wanted to replace him with "their man." Plaintiff does allege that the attempts to remove him are based on purely political considerations. He also alleges that Bonnie Yeargin was appointed to the Board of Tax Assessors in return for giving testimony favorable to defendants.

In *Scott*, the Supreme Court noted that "[t]he predominate purpose of 1985(3) was to combat the prevalent animus against Negroes and their [Republican and Northern] supporters." 463 U.S. at 836, 103 S.Ct. at 3360. The Court believed that to hold that 1985(3) provided a remedy for "every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means" would make the federal courts,

> monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume.... The proscription of 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

*Id.* The Court found insufficient support in the legislative history for such an expansion of § 1985(3). *Id.*

Thus, the Supreme Court has, at the very least, indicated that it would not recognize a § 1985(3) cause of action for a political conspiracy not accompanied by racially motivated animus. Until the Court squarely faces the issue, this indication is the clearest guide for the lower courts. Unless directed otherwise, this court will follow those circuits holding that allegations of a wholly political conspiracy will not support a cause of action under § 1985(3). Plaintiff has failed to state a claim under § 1985(3).

### 2. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege facts showing that the defendant's acts or omissions, done under color of state law, result-

ed in the deprivation of a right, privilege, or immunity protected by the Constitution or the laws of the United States. *Emory v. Peeler,* 756 F.2d 1547, 1154 (11th Cir. 1985); *Dollar v. Haralson County, Ga.,* 704 F.2d 1540, 1542–3 (11th Cir.1983), *cert. den.,* 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983). The Supreme Court and the Eleventh Circuit have recognized that a conspiracy to violate constitutional rights states a claim under § 1983. *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir. 1988). To establish a prima facie case of a conspiracy to violate rights protected by § 1983, a plaintiff must present evidence that the defendants reached an understanding to violate his rights. *Strength v. Hubert,* 854 F.2d at 425. While there is some dispute about the propriety and extent of defendants' efforts, there is no dispute that defendant Turner directed an aggressive campaign, joined by the other defendants, to force plaintiff Smith from his elected office as chairman and his appointed position as member of the Board of Tax Assessors.

■ Defendants argue that they are entitled to summary judgment on the § 1983 conspiracy claims because plaintiff Smith has failed to establish a material element of his § 1983 action—the deprivation of a protected right, privilege or immunity. The court agrees that plaintiff has failed to allege the deprivation of protected property interest.[4] A claim for relief from a conspiracy under § 1983 must allege both a conspiracy and an actual deprivation of a constitutionally protected interest. *See Slavin v. Curry,* 574 F.2d 1256, 1261 (5th Cir.1978).

■ Plaintiff has alleged that defendants have acted unlawfully and unconstitutionally in attempting to remove him from both his elected office as chairman and his appointed office as member of the Clayton County Board of Tax Assessors. It is clearly established in Georgia that a public employee who can only be fired for cause has a constitutionally protected interest in continued employment. *Nolin v. Douglas County,* 903 F.2d 1546, 1553 (1990); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Brown v. Georgia Dept. of Revenue,* 881 F.2d 1018, 1026 (11th Cir.1989). Plaintiff Smith continues to be employed as a member of the Board of Assessors, his term set to expire at the end of 1994. However, plaintiff was replaced as chairman by Bonnie Yeargin subsequent to the filing of the complaint. The complaint alleges a conspiracy to unlawfully deprive plaintiff of this office. In his brief in opposition to the summary judgment motion now before the court, plaintiff contends that he has since been unlawfully removed as chairman as a result of the conspiracies alleged in the complaint.

■ This claim rests primarily on plaintiff's contention that the election of Bonnie Yeargin to succeed him was unlawful. Smith protests her election on two grounds. First, Smith claims that "historically" only the chairman has the right to call a meeting of the board. Defendants argue that any of the three members of the board can call a meeting. While O.C.G.A. § 48–5–298(a) states that county boards of tax assessors shall elect a chairman at the first meeting of each tax year, a board is not required to hold its first meeting until April 21. *See* O.C.G.A. §§ 48–5–297, 48–5–301. Although O.C.G.A. § 48–5–298 provides that a chairman's term is for one tax year, the fact that the election of a chairman may be delayed until April 22 indicates that "one tax year" does not mean a term of exactly twelve months. It is undisputed that Smith refused to schedule a meeting before April of 1990 and that Yeargin called the January 9, 1990 meeting at which she was elected.

■ Neither side has presented the court with legal authority for their positions on this issue. However, the court's own research indicates that the January 9, 1990 meeting was properly convened. State law

---

**4.** See discussion of Count Four below concerning alleged violation of plaintiff's First Amendment rights.

provides that "joint authority given to any number of persons or officers may be executed by a majority of them, unless it is otherwise declared." O.C.G.A. § 1–3–1(d)(5). The relevant statutes require the County Board of Tax Assessors to meet by April 21 and to elect a chairman at its first meeting of the year. The power to schedule or call the first meeting is not limited to the Chairman. Consequently, O.C.G.A. § 1–3–1(d)(5) directs the court to construe that power as being given to the board as a whole and as exercisable by a majority of its members. Although Bonnie Yeargin called the meeting, Charles Workman acquiesced in and ratified Yeargin's action by his attendance and participation. Workman and Yeargin constituted a majority of the board and had the power to call a meeting and to elect Yeargin as the new chairman.

■ Smith also claims that Yeargin's election was void because she is ineligible to serve as a member of the board. If Yeargin's appointment was void, then she and Workman did not constitute a majority and could not exercise authority as such. *See Felker v. City of Monroe,* 22 Ga.App. 301, 95 S.E. 1023 (1918) (section does not apply where majority includes unqualified member or officer). Plaintiff states that he will prove at trial that Yeargin was ineligible to serve on the board because she was and is a civil service employee.

Before being appointed to the Board of Assessors, Yeargin was a part-time staff appraiser for the county. Turner depo., pp. 65–66. Plaintiff has testified that the county tax appraisers [5] are civil service employees who are hired through the county personnel department upon recommendation of department heads and approval by the county commissioners. Smith depo., pp. 68–69. Plaintiff cites Clayton County Civil Service Board Rule 3.110 which prohibits

county civil service employees from seeking or holding elected or appointed political office.[6] However, state law clearly contemplates dual service as a member of the Board of Assessors and as a staff appraiser. *See, e.g.,* O.C.G.A. § 48–5–264(c) (chief appraiser may be member of Board of Tax Assessors). O.C.G.A. § 48–5–295 provides:

> No member of the board who is also employed by the county as a staff appraiser under Code Section 48–5–262 may be removed by the county governing authority during his term of appointment until the member has been afforded an opportunity for a hearing before the judge of the superior court of the county for recommendations by the judge of the superior court to the county governing authority regarding such removal.

Further, plaintiff himself has been certified as a staff appraiser pursuant to O.C. G.A. § 48–5–262. Smith depo., pp. 57–60. Absent such an appointment, plaintiff would not have had a right to a hearing before being removed by the county commissioners. O.C.G.A. § 48–5–295. While plaintiff was not a civil service employee when he was appointed to the board, if Clayton County Civil Service Board Rule 3.110 applies, he is barred from maintaining his present dual status. Therefore, if Yeargin is ineligible to serve on the Board of Assessors, so is plaintiff. Plaintiff's argument can afford him no relief.

The court must look to state law to determine whether a person has a property right to continue in his employment. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). State law indicates that Bonnie Yeargin's election on January 9, 1990 was valid. It follows that Smith had no vested interest in remaining in his office as chairman of the Board of Tax Assessors and has, therefore, failed to al-

---

**5.** Staff appraisers conduct appraisals of all taxable property in the county and reports its findings to the Board of Tax Assessors. *See* O.C. G.A. 48–5–263. The Board of Tax Assessors determines what property in the county is taxable and makes assessments of unpaid taxes on such property. *See* O.C.G.A. 48–5–299.

**6.** According to plaintiff, Clayton County Civil Service Board Rule 3.110 provides:

> Employees may neither seek nor hold elective or appointed political office, actively participate in partisan political campaigns, nor solicit or receive assistance relative to their job or conditions of employment from elective office holders or other political officials.

lege the deprivation of a constitutionally protected right.

■ Smith also claims that defendants violated his due process rights by conspiring to cause the Board of County Commissioners to hold a removal hearing before Smith had been afforded an opportunity for a hearing before the judge of the Superior Court of Clayton County, as required by O.C.G.A. § 48–5–295(b).[7] Plaintiff was successful in obtaining an injunction from the superior court preventing his removal before the holding of such a hearing. The record shows that plaintiff was subsequently afforded a hearing in the Superior Court of Clayton County, that the judge recommended that he not be dismissed, and that the Board of Commissioners never held a removal hearing. Clearly, plaintiff was afforded due process and the favorable outcome prevented the deprivation of any property interest he may hold in continued employment as a member of the Board of Tax Assessors.[8]

There is ample evidence to support plaintiff's allegation that defendants intend to force him to resign. Smith alleges that defendants have made it impossible for him to carry out any of the duties of this office by denying him access to the county computer system, taking away his county vehicle, attempting to move him out of the office he used for county business, and excluding him from the meetings, activities and decision-making of the Board of Tax Assessors. However, plaintiff has shown no property or unalienable right in the things of which he is being denied and he has not shown an equal protection violation vis-a-vis anyone else similarly situated, and thence, has alleged no constitutional deprivations of case or controversy proportion. To be sure, if the motivations of defendants are as he suspects, and if the conditions become sufficiently intolerable so that

he resigns, he may then very well have an action for deprivation of his position as a member of the Board of Tax Assessors.

### 3. Conspiracy to Damage Plaintiff's Reputation

■ The conspiracy claim in Count Two is insufficient to sustain a cause of action under 42 U.S.C. § 1983. Standing alone, a claim that a state official's actions resulted in damage to the plaintiff's reputation is insufficient to establish a deprivation of a liberty or property interest protected by the Constitution. *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Emory v. Peeler*, 756 F.2d 1547, 1554 (11th Cir.1985). However, when coupled with the loss of a more tangible interest, such as employment, damage to reputation can support a constitutional claim. *Paul v. Davis*, 424 U.S. at 700–702, 96 S.Ct. at 1161. As demonstrated above, plaintiff has failed to allege a tangible property loss in addition to damage to his reputation.

### C. *Plaintiff's State Law Slander Claim*

Plaintiff alleges that statements made by the defendants to the press and other individuals constitute slander under O.C.G.A. § 51–5–4(3). Defendants contend that the plaintiff has no competent evidence of slander and that any statements made by defendants in reference to plaintiff were privileged communications under O.C.G.A. § 51–5–7.

The record contains no recitation of the specific time, place or content of an allegedly slanderous statement other than allegations that defendant Turner repeatedly stated that plaintiff was incompetent. Smith claims to have a collection of newspaper articles that contain statements made by Turner but these are not before the court. In his deposition, defendant

---

7. The parties disagree as to whether the applicable law, O.C.G.A. 48–5–295(b), requires that a member of a county board of tax assessors who is also a staff appraiser be afforded a hearing in the county superior court *before* the county commissioners hold a removal hearing before the assessor is actually removed. The superior court sided with plaintiff.

8. Because plaintiff retains his position on the Board of Assessors, it is unnecessary to decide whether plaintiff has a legitimate expectation of entitlement to remain in that position for the length of his appointed term.

Turner admits that he stated to the press that he believed plaintiff was incompetent to serve as Chairman of the Board of Tax Assessors. Turner Depo., p. 86. Turner testified he made these statements because he was "bound to tell the truth." [9]

■■■ The Georgia statutory definition of slander includes "making charges against another in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51–5–4(3). Malice is a necessary element of slander which is implied where the slander is *per se* actionable, but not where the charge was a privileged communication. *Duchess Chenilles, Inc. v. Masters*, 84 Ga.App. 822, 67 S.E.2d 600 (1951); O.C.G.A. § 51–5–5. When the charge is a privileged communication, a lack of actual malice bars recovery. O.C.G.A. § 51–5–5; *Rucker v. Gandy*, 158 Ga.App. 104, 279 S.E.2d 259 (1981). Charges concerning "the acts of public men in their public capacity and with reference thereto" are privileged communications under Georgia law. O.C.G.A. § 51–5–7. However, such a privilege may not be used "merely as a cloak for venting private malice" and "disappears in the face of actual malice." O.C.G.A. § 51–5–9; *Morton v. Stewart*, 153 Ga.App. 636, 638, 266 S.E.2d 230 (1980). Plaintiff still must prove actual malice. *Morton v. Gardner*, 155 Ga.App. 600, 271 S.E.2d 733 (1980).

■■■ Plaintiff Smith is clearly a public official and the charges made concerned the performance of his official duties. Where the plaintiff is a public figure, first amendment concerns arise and consequently a constitutional rather than common law or statutory measure of actual malice is used. *Diamond v. American Family Corp.*, 186 Ga.App. 681, 682–683, 368 S.E.2d 350 (1988); *Williams v. Trust Co.*, 140 Ga.App. 49, 58, 230 S.E.2d 45 (1976). A plaintiff must offer clear and convincing proof that the charge was false and was made with knowledge of its falsity or with a reckless disregard for the truth. *New York Times Co. v. Sullivan*, 376 U.S. 254,

84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Williams v. Church's Fried Chicken, Inc.*, 158 Ga.App. 26, 279 S.E.2d 465 (1981); *Williams v. Trust Co.*, 140 Ga.App. 49, 230 S.E.2d 45 (1976). To survive a defendant's motion for summary judgment, a plaintiff who is a public figure must produce evidence that the speaker knew the charge was false or at least had serious doubts concerning its truth. *Fiske v. Stockton*, 171 Ga.App. 601, 603–604, 320 S.E.2d 590 (1984); *Hemenway v. Blanchard*, 163 Ga. App. 668, 671–672, 294 S.E.2d 603 (1982) (plaintiff must show charge made with a "high degree of awareness of probable falsity").

■■■ Plaintiff alleges that defendant Turner made statements with the intention of forcing him to resign. Turner has testified that Smith could have avoided any embarrassment as a result of statements made to the press by resigning as Chairman when Turner and defendant King first asked him to do so. However, it is defendant Turner's knowledge or reckless disregard for the truth—not his motives—that determine whether actual malice existed. *Williams v. Trust Co. of Ga.*, 140 Ga.App. 49, 56, 230 S.E.2d 45 (1976).

■■■ Plaintiff argues that Turner began the campaign against plaintiff before he had time to make a reasonable investigation, and that such an investigation would have shown that problems in the Tax Assessor's office existed before plaintiff was a member of the board. However, defendants have produced evidence of a number of irregularities and problems from which a reasonable person might infer that plaintiff was incompetent. Whether or not defendant Turner's conclusions were in error, plaintiff has not shown that Turner knew that the information available to him was false or unreliable. Even where a plaintiff produces evidence sufficient to create a fact issue regarding the defendants' knowledge that the charges were false, he may nonetheless fall short of the constitutional standard for establishing actual malice by

---

**9.** Plaintiff alleges that Turner stated that plaintiff was incompetent to serve as member *and* as Chairman of the Board of Tax Assessors.

clear and convincing evidence. *Savannah News Press v. Whetsell*, 149 Ga.App. 233, 237, 254 S.E.2d 151 (1979). Plaintiff's allegations and evidence concerning motives, reasonableness, and the lack or inadequacy of prior investigation cannot establish actual malice in the constitutional sense. *Williams v. Trust Co.*, 140 Ga.App. 49, 58, 230 S.E.2d 45 (1976).

When a plaintiff fails to provide a substantive basis for a finding of knowing falsity or reckless disregard for the truth, "summary judgment rather than a trial on the merits, is a proper vehicle for affording constitutional protection. [Cit.]" *Fiske v. Stockton*, 171 Ga.App. 601, 605, 320 S.E.2d 590 (1984). Plaintiff has failed to produce evidence that defendant Turner acted with the actual malice required by constitutional standards. Plaintiff has produced no evidence of any slanderous statements by any other defendant. Accordingly, all defendants are entitled to summary judgment on plaintiff's tort claim for damages under state slander law.

### D. *Plaintiff's Claim For Relief From Interference*

In Count Four, plaintiff alleges that defendants have conspired to "circumvent the democratic process of elected and autonomous government" and to "wilfully deprive the citizens of Clayton County of an independent and autonomous Board of Tax Assessors" to the detriment of the citizenry and harm to plaintiff. This claim is also brought under § 1983 and § 1985.

As discussed previously, the Supreme Court has been unwilling to extend the reach of § 1985(3) to provide a remedy for "every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means." *Scott*, 463 U.S. at 836, 103 S.Ct. at 3360. Federal courts should be slow to assume the role of monitoring political competition under § 1985(3). *Id.* Count Four fails to state a claim under that code section.

Count Four does state a cause of action for under § 1983 for violation of plaintiff's first amendment rights. The Su-

preme Court has now clearly established that when an employee's effectiveness is not determined by purely political considerations, he may not be removed from his position solely on the basis of his political affiliation. In *Elrod v. Burns*, a plurality of the Court held that a newly elected county sheriff could not fire members of his office staff solely because they failed to obtain requisite support or affiliation with his political party. 427 U.S. 347, 351, 373, 96 S.Ct. 2673, 2678–79, 2689, 49 L.Ed.2d 547 (1976). In *Branti v. Finkel*, the plurality held that a newly elected public defender could not fire assistant public defenders who did not have the support of his party. 445 U.S. 507, 514–516, 100 S.Ct. 1287, 1292–93, 63 L.Ed.2d 574 (1980).

In the recent case of *Rutan v. Republican Party of Illinois*, a majority of the Court affirmed the holdings of *Branti* and *Finkel*, extending the protection from patronage practices to any adverse employment decision that was based on the employee's political affiliation. —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Penalties imposed on employees for exercise of their First Amendment right of free association are significant even when the penalty is less than an actual discharge. *Id.* 110 S.Ct. at 2737. The penalty need not be the substantial equivalent of a discharge. *Id.* Even trivial acts of retaliation implicate first amendment concerns. *Id.* 110 S.Ct. at 2737, fn. 8.

In *Elrod v. Burns*, the Court held that injunctive relief was proper where plaintiffs were threatened with discharge or had agreed to provide support for a political party to avoid being discharged. 427 U.S. at 373, 96 S.Ct. at 2689. The Court stated that the "loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (citing *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)); *see also Branti v. Finkel*, 445 U.S. at 520, 100 S.Ct. at 1295 (upholding permanent injunction preventing public defender from terminating previously appointed assistant public defenders). Thus, if a jury finds that defendants are

attempting to remove plaintiff from office because of plaintiff's association with an opposing political party, or because plaintiff failed to win the political support of defendants' party, plaintiff may be entitled to injunctive relief.

■ As noted above, plaintiff has not explicitly stated that defendants are members of a different political party, although that might be inferred from his statement that he is a longtime member of the Democratic party. In his deposition, plaintiff testified that he had been told that defendant Turner "was attending these Republican breakfasts on Saturday mornings up at the Farmer's Market and that he was making brash statements about removing me and Creglow from the tax assessor's office ... and put his people in some of these positions...." Smith depo., p. 272. Plaintiff has alleged that defendants are harassing him and trying to remove him from office for "purely political reasons" and in "retaliation for plaintiff's First Amendment protected views of defendants."

Plaintiff has produced evidence to support his allegations that defendants desired to remove him, not because of incompetence, but because they wanted to replace him with "their man" Charles Workman. Defendants have produced evidence to support their claim that their desire to replace plaintiff was based on an alleged lack of competency rather than political considerations. The presence of this factual dispute is sufficient to resist defendants' motion for summary judgment on Count Four insofar as it is brought under § 1983 to seek relief for impingement of plaintiff's first amendment rights.

### E.   *Qualified Immunity Defense*

■ The doctrine of qualified immunity generally shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When considering a motion for summary judgment based on a defense of qualified immunity, a court must evaluate the government official's conduct under an objective, reasonable person standard. *Anderson v. Creighton,* 483 U.S. 635, 642, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *see also Herren v. Bowyer,* 850 F.2d 1543, 1545–46 (11th Cir.1988). The relevant question is "whether a reasonable official could have believed his or her actions were lawful in the light of clearly established law and the information possessed by the official at the time the conduct occurred." *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990); *Anderson v. Creighton,* 483 U.S. at 642, 107 S.Ct. at 3040.

Plaintiff has produced evidence to support his allegations that defendants have both acted and conspired to punish plaintiff for exercise of his First Amendment rights. As noted above, even before *Rutan,* the Supreme Court held, that an employee whose effectiveness is not determined by purely political considerations may not be removed from his position solely on the basis of his political affiliation. *Elrod v. Burns,* 427 U.S. 347, 351, 373, 96 S.Ct. 2673, 2678–79, 2689, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 514–516, 100 S.Ct. 1287, 1292–93, 63 L.Ed.2d 574 (1980). Defendants are not entitled to summary judgment on the basis of qualified immunity.

### III.   CONCLUSION

Because plaintiff has failed to present evidence of any racially based animus toward him by defendants, Counts One, Two, and Four fail to state a claim under 42 U.S.C. § 1985(3) for conspiracy to violate plaintiff's constitutional rights. Plaintiff has also failed to present evidence of an unconstitutional deprivation sufficient to resist summary judgment as to his claims in Counts One and Two as brought under 42 U.S.C. § 1983. However, plaintiff has presented evidence that defendants' attempts to remove him from the Board of Tax Assessors constitute an unconstitutional impingement of his first amendment rights. Defendants' motion for summary judgment on Counts One and Two is

GRANTED. Defendants' motion for summary judgment on Count Four is GRANTED as to claims under § 1985 and DENIED as to claims under § 1983.

Plaintiff has not met the constitutional requirement that he produce clear and convincing evidence that defendants' statements concerning him were made with the actual malice necessary to support his slander claim. Summary judgment is, therefore, GRANTED to defendants on Count Three of the complaint.

SO ORDERED.